[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendants, Cigna Property Casualty Company and Pacific Employers Insurance Company, have moved for summary judgment on all counts of the Plaintiff's Amended Complaint dated November 2, 1994. The basis for the Motion is that it is clear from the face of the underlying complaint and the insurance policy upon which coverage is claimed that the defendants had no duty to defend either Patrick Hibbits or The Inn at Falls Village, Inc.
Factual Background
This case arises from the personal injuries sustained by the plaintiff, David Edelman, a state trooper who was assaulted on November 1, 1988 by Patrick Hibbits as he attempted to place an intoxicated Hibbits under arrest. In a complaint against Hibbits and Hibbits' business, The Inn at Falls Village, Inc ("The Inn"), Edelman alleged that The Inn was corporation of which Hibbits was the president. The Inn operated an inn in Falls Village, Canaan, Connecticut. Edelman's underlying complaint further alleged[1]: On November 1, 1988 Hibbits was on The Inn's premises, was intoxicated and assaulted his wife, Janice France. First Count, ¶ 4; Third Count, ¶ 10. Thereafter Janice France called the State Police for assistance against her husband's attack. First Count, ¶ 5; Third Count, ¶ 11. The plaintiff, Trooper Edelman, was dispatched to aid another trooper in dealing with Hibbits. First Count, ¶ 8; Third Count, ¶ 13. After being told he was under arrest, Hibbits became very combative, abusive and violent. First Count, ¶ 10; Third Count, ¶ 16. While Trooper Edelman was attempting to restrain Hibbits, Hibbits kicked Edelman in the head two times in rapid succession and with great force. First Count, ¶ 13; Third Count, ¶ 19. At the time of the incident Hibbits was intoxicated with alcohol. First Count, ¶ 17: Third Count, ¶ 23. In November of 1988 Hibbits had a history of alcohol that should have been known to The Inn. First Count, ¶ 18; Third Count, ¶ 24. Despite Hibbits' addiction to alcohol The Inn continued to employ him for the purposes of buying, selling, drawing, preparing and otherwise controlling alcoholic beverages. First Count, ¶ 19; Third Count, ¶ 26. By so exposing Hibbits. a known alcoholic, to alcohol, The Inn failed to act reasonably under the circumstances. First Count, ¶ 21; Third Count, ¶ 29. By permitting an unsuitable person to live and work at The Inn and to be president of a liquor retailing corporation, The Inn violated the Liquor Control Act. First Count, ¶ 22; Third Count, ¶ 30. The Inn is liable for its per se negligence, common law negligence and was reckless in that it CT Page 13916 acted with disregard for the safety of those who would have to deal with Hibbits while he was intoxicated. First Count, ¶ 23. In the course of resisting arrest Hibbits intentionally assaulted Edelman, recklessly assaulted Edelman and negligently assaulted Edelman. Second Count, ¶ 17. As incorporators, directors, officers and employees of The Inn, Janice France and Hibbits managed the affairs of The Inn. Third Count, ¶ 2. France and Hibbits took corporate action to employ Hibbits as president of The Inn and allowed him to have access to the liquor at the Inn despite the fact that they knew he was an alcoholic. Third Count, ¶ 4.
After Edelman filed suit against The Inn and Hibbits, they both notified the defendants of the lawsuit and demanded a legal defense pursuant to policy number D19278207. The defendants have introduced a copy of that policy, in which the insureds are listed as "Janice France and Patrick Hibbits d/b/a The Inn." The policy provides in pertinent part:
 SECTION I — COVERAGES COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
2. Exclusions.
This insurance does not apply to:
 a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
 c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
 (1) Causing or contributing to the intoxication of any person;
 (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
 (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages. CT Page 13917
COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY
2. Exclusions.
 b. This insurance applies to "personal injury" only if caused by an offense:
. . . .
 (2) Arising out of the conduct of your business . . . .
SECTION II — WHO IS AN INSURED
1. If you are designated in the Declarations as:
 a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
. . . .
 c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.
After reviewing the claims against The Inn and the claims against Patrick Hibbits, the defendants declined to afford a defense to either the Inn or Hibbits because the claims made against them were beyond the scope of the general liability policy. Mr. Edelman and The Inn eventually agreed to a "Stipulated Judgment" in the amount of $150,000 under the terms of which Mr. Edelman forewent his right to collect any money from Hibbits or The Inn. In exchange, Hibbits and The Inn assigned to Mr. Edelman any statutory or common law rights they had against the defendants and allowed Mr. Edelman to exercise their right of litigation authorized by Connecticut General Statutes §38a-321. Based upon these terms, judgment entered against Hibbits and The Inn on August 23, 1993.
Discussion of Law and Ruling CT Page 13918
Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carnage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v.Middlesex Ins. Co., 219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R.Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908
(1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 380, 381; Burnsv. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson, 176 Conn. 304, 309,407 A.2d 971 (1978); Strada v. Connecticut Newspapers, Inc.,193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batickv. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); New MilfordSavings Bank v. Roina, 38 Conn. App. 240, 243-44. 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stam,224 Conn. 524, 530, cert. denied, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993);Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116 (1991).
Issues of insurance coverage and contractual disputes are particularly appropriate for summary judgment because the meaning of the insurance contract presents questions o law unsuitable for of the insurance contract presents questions of law unsuitable for jury resolution. See, .e.g. Excel Logistics v. Maryland CasualtyCo., 40 Conn. App. 415, 671 A.2d 408 (1996); Heyman Associatesv. Ins. Co. of Pennsylvania, 231 Conn. 756, 653 A.2d 122 (1995);Sylvester v. United States Automobile Association Casualty Ins.,42 Conn. App. 219, 678 A.2d 1005 (1996), cert. granted239 Conn. 916 (1996).
Terms of an insurance policy are to be construed according to the general rules of contract construction. Simses v. NorthAmerican Co. for Life Health Ins., 175 Conn. 77, 84,394 A.2d 710 (1978). If the underlying complaint does not state a claim CT Page 13919 which appears on its face to be within the terms of the policy coverage, an insurer is entitled to summary judgment. ExcelLogistics v. Maryland Casualty Co., 40 Conn. App. 415,671 A.2d 408 (1996): Heyman Associates v. Ins. Co. of Pennsylvania,231 Conn. at 769, n. 17.
An insurer must look at two documents when determining whether a claim has insurance coverage: 1) the policy under which coverage is sought; and 2) the language of the complaint against the insured. The insurer's duty to defend its insured depends on whether the complaint against the insured states facts which appear to bring the claimed injury within the policy coverage.Missionaries of Mary, Inc. v. Aetna Casualty Surety Co.,155 Conn. 104, 110, 230 A.2d 21 (1967). The insurer may not look beyond the policy or the complaint and may not infer facts extrinsic to these documents when assessing an insured's entitlement to insurance coverage. Id. at 111.
Whether an insured has coverage under an insurance contract generally presents a question of law. Wallingford v. HartfordAccident Indemnity Co., 231 Conn. 301, 305, 649 A.2d 530
(1994). A review of the insurance policy and Mr. Edelman's complaint against The Inn supports the defendants contention that they had no duty to defend The Inn as a matter of law.
Counts One and Three of the underlying complaint clearly seek to recover against The Inn, and its officers for "causing or contributing to the intoxication of" Hibbits. Such conduct is excluded from coverage under the absolute liquor liability exclusion set forth above.
The plaintiff has argued that the language of the exclusion only applies where the insured causes or contributes to the intoxication of a third party, not when the insured contributes to his own intoxication. The language of the exclusion applies to claims for "causing or contributing to the intoxication of any person." "`Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction. See, e.g., Weingarten v. Allstate Ins. Co.,169 Conn. 502, 509-10, 363 A.2d 1055 [(1975), overruled in part,Streitweiser v. Middlesex Mutual Assurance Co., 219 Conn. 371,593 A.2d 498 (1991)]; A. M. Larson Co. v. Lawlor Ins. Agency, Inc., 153 Conn. 618, 622, 220 A.2d 32 [1966]. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be CT Page 13920 accorded its natural and ordinary meaning. Weingarten v. AllstateIns. Co., supra, 509.' Griswold v. Union Labor Life Ins. Co.,186 Conn. 507, 512-13, 442 A.2d 920 (1982)." Heyman Associates No. 1v. Insurance Co. Of Penn., 231 Conn. 756, 769, 770, 653 A.2d 122
(1995).
The term "any person" is all encompassing and includes the insured or the agent, employee or officer of the insured. While no appellate court in Connecticut has addressed the issue of whether an absolute liquor exclusion applies to injuries or damages caused by an intoxicated insured, courts in other jurisdictions have held that injuries caused by intoxicated employees come within the exclusion. Kelly v. Lee's Old FashionedHamburgers, Inc., 896 F.2d 923 (5th Cir. 1990); Reserve Ins. Co.v. Hall, 44 C.A.3d 569, 118 Cal.Rptr. 758 (1975); Williams v.U.S. Fidelity and Guaranty Co. 854 F.2d 106 (5th Cir. 1988).
The Court in Williams, supra, state that the "typical" alcohol liability exclusion is "free of ambiguity" and does not cover a claim that a tavern was negligent in its service of alcohol to or in its supervision of an intoxicated employee.
The policy issued by the defendants upon which the plaintiff bases his claim, listed "Janice France and Patrick Hibbits d/b/a The Inn at Falls Village" as the only insureds. Therefore, the plaintiff's claims based on the defendants' breach of contract with The Inn at Falls Village, Inc. cannot succeed for the additional reason that that corporation was not an insured.
The "conduct of the business" provision of the policy provides yet another valid basis for the defendants' refusal to defend. As set forth above, the policy provides that Hibbits and The Inn were insured thereunder only to the extent that a claim is made "with respect to the conduct of a business of which [Hibbits] is the sole owner". Moreover, the policy insured only personal injury arising from the conduct of the insured's business. Courts of this state have held that an assaults or other criminal conduct committed while an employee is on the job do not further the business interests of his employer, and therefore, are not considered to be "in the course of business" for purposes of respondeat superior liability. A — G Foods,Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 579 A.2d 69 (1990) (unless [employee] was actuated at least in part "`"by a purpose to serve a principal, the principal is not liable); Brown v.Housing Authority, 23 Conn. App. 624, 583 A.2d 643 (1990) (that CT Page 13921 the assailant was "on duty" at his place of employment does not mean that his sexual assault occurred during the course of his employment because it was not in furtherance of the employer's business); Gutierrez v. Thorne, 13 Conn. App. 493, 537 A.2d 527
(1988) (the employee's assault was not in furtherance of the business interests of his employer, so the mere fact that it occurred while employee was traveling from one job site to another does not mean the assault occurred in the course of his employment) Drunkenly assaulting a state trooper while resisting arrest for beating his wife was certainly not in furtherance of the business of the insured, which was operating an Inn. Whether judged alone or analogized to the respondeat superior cases, Hibbits' conduct was not within the scope of the conduct of Hibbits' business at The Inn at Falls Village.
The final basis which supports the defendants' position that they had no duty to defend on the underlying complaint is the policy provision, set forth above that "[t]his insurance does not apply to: (a) `bodily injury' . . . expected or intended form the standpoint of the insured." Count Two of the underlying complaint alleged that Hibbits, after assaulting his wife, violently resisted arrest, and kicked Trooper Edelman in the head two times in rapid succession and with great force. Edelman attempted to evade the "intentional conduct" exclusion by describing the foregoing conduct as a "negligent assault" and by alleging in the First and Third Count of the Complaint that the Inn, acting through its president, Hibbits, was negligent in allowing Hibbits to be in close proximity to liquor. Intentional acts cannot evoke insurance coverage, even with a clever twist of words by counsel. Certain acts are, by their nature, intentional and can never constitute negligence. American National Fire Ins. Co. v. Schuss,221 Conn. 768, 776-777, 607 A.2d 418 (1992):
 It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree; Mingachos v. CBS, Inc., 196 Conn. 91, 103, 491 A.2d 368 (1985); are separate and mutually exclusive. "The distinction between intentional and unintentional invasions draws a bright line of separation among shadings of almost infinitely varied human experiences." W. Prosser W. Keeton, Torts (5th Ed. 1984) p. 33. Although in a given case there may be doubt about whether one acted intentionally or negligently, the difference in meaning is clear. "As Holmes observed, even a dog CT Page 13922 knows the difference between being tripped over and being kicked." Id.
American National Fire Ins. Co. v. Schuss, 221 Conn. at 776-777.
In an analogous case the Court of Appeals of Michigan upheld summary judgment on a declaratory judgment action in favor of an insurer notwithstanding the plaintiff's attempt to couch the complaint against the insured in terms of negligent, rather than intentional conduct. Aetna Casualty Surety Co. v. Sprague,163 Mich. App. 650, 415 N.W.2d 230 (1987). In Sprague the insured, Sprague, beat Marlene Wayne to death. Sprague was found guilty but mentally ill. Thereafter the estate of Wayne sued Sprague and his father for wrongful death and negligence. Aetna issued a homeowner's policy to the father. Aetna filed declaratory judgment action in which it sought a ruling that it had no duty to defend or provide coverage to Sprague under the policy. Aetna then filed a summary judgment motion on the grounds that the policy provided for an exclusion of coverage for bodily injuries "expected or intended" by the insured. In support of summary judgment Aetna offered evidence of Sprague's conviction. The estate of Wayne responded that its claim was based on Sprague's negligence in not taking his medicine and that it was the negligence that was the proximate cause of the death. The Court stated:
 First, it is true that the estate's complaint against Sprague alleged negligence in Sprague's failure to take his medication or pursue treatment. On the other hand, it is clear that the true basis for the complaint is the fact that Sprague killed Wayne. If Sprague expected or intended that Wayne would die, then the complaint is a transparent attempt to trigger insurance coverage by characterizing allegations of tortious conduct under the guise of "negligent" activity. In such circumstances there would be no duty to defend or provide coverage.
415 N.W.2d at 231.
In this case the true basis for the complaint was the injury suffered by Edelman as a result of the intentional conduct by Hibbits. Couching the complaint in terms of a negligent Hibbits negligently entrusting alcohol to a violent Hibbits was a CT Page 13923 "transparent attempt" to trigger insurance coverage.
For the reasons set forth above, the defendants had four valid bases for denying a, defense to The Inn at Falls Village, Inc. and three valid bases for denying a defense to Hibbits. Therefore, summary judgment may enter in favor of the defendants on the First, Count of the Complaint. Since all of the other counts of the Complaint are derivative of the plaintiff's claim that the defendants breached their duty to defend under the policy, summary judgment may enter on all remaining counts in favor of the defendants.
By the court,
Aurigemma, J.